**Ronald L. GABLE and Jodi L. Gable,
Appellants–Plaintiffs,**

**v.**

**Roger A. CURTIS, Heritage Church Builders, Inc., Lynda Curtis, Ron Keeling and Union Federal Savings and Loan Association, Appellees–Defendants.**

No. 54A01–9606–CV–189.

Court of Appeals of Indiana.

Nov. 27, 1996.

Miriam A. Rich, Indianapolis, for Appellants–Plaintiffs.

Harry A. Siamas, Collier, Homann & Siamas, Crawfordsville, Stuart K. Weliever, Henthorn, Harris & Taylor, Crawfordsville, for Appellees–Defendants.

## OPINION

ROBERTSON, Judge.

Ronald L. and Jodi L. Gable [Gable] appeal the summary judgments entered in their actions 1) against Roger A. Curtis, individually, for fraud; 2) against Lynda Curtis [Roger's spouse] for the intentional infliction of emotional distress; and 3) against Ronald Keeling and the Union Federal Savings and Loan Association [Bank] for fraud. We first address, and affirm, the trial court's decision to grant Gable an extension under Ind.Trial Rule 72(E) to file the praecipe which initiated this appeal. Gable raises three issues, one related to each of the causes of action listed above. We reverse the summary judgment in favor of Roger Curtis, individually, for fraud. In all other respects, we affirm.

## FACTS

The facts in the light most favorable to the nonmovant, Gable, reveal that the Gables desired to build a house and met with Roger A. Curtis, a building contractor, who had been recommended to them. Curtis operated through his closely held corporation, Heritage Church Builders, Inc. Curtis estimated the cost of building Gable's home at $85,000.00. Gable entered into a construction management contract with Heritage Church Builder's Inc. to build a home for that price.

Gable went to the Bank and met with Bank representative, Ron Keeling, regarding a loan to build the home. The Bank determined that it would loan Gable only $76,800.00. Gable again met with Curtis who agreed that Heritage Church Builder's Inc. would build the home for the lower amount that the Bank was willing to lend. Gable then took out the loan from the Bank. At some point, Keeling stated to Gable that "Roger [Curtis] is good with his budgets." The Gables concede that Keeling thought that he was telling the truth.

Construction began. Costs overran the budget. Gable agreed to pay approximately an additional $10,000.00 to finish the home. However, the house cost approximately $120,000.00 to complete, even before the air conditioning system (which had been included in the contract) had been installed. The dispute began to heat up.

One morning, Lynda Curtis, Roger Curtis' spouse, called the Gables' home on the telephone and spoke to Jodi Gable approximately seven times in one hour. Lynda Curtis screamed and yelled at Jodi regarding the allegations that the Gables had made against Roger Curtis. Lynda threatened to "repossess" the home, apparently demanding that the Gables pay for the construction of the home. Lynda threatened to come over and stated repeatedly that the Gables "would pay." Jodi admitted in her deposition that Lynda did not specifically threaten her with bodily harm and that the reference that the Gables "would pay" meant, at least in part, that the Gables would pay Lynda's medical bills incurred for the distress they had caused her by accusing her husband of misconduct. Jodi directed Lynda to the Gables' attorney and hung up on her repeatedly. Jodi was very upset after the phone calls, locked all the doors, feared for her family and her home, and was still brought to tears over the incident at the time of her deposition some months later.

Ultimately, Gable sued Heritage Church Builders, Inc., and Roger Curtis, individually, for breach of contract and fraud. Jodi Gable also sued Lynda Curtis for the intentional infliction of emotional distress based upon the upsetting phone calls. Gable also sued the Bank and its representative, Ronald Keeling, for fraud based upon Keeling's statement that "Roger is good with his budgets."

Roger Curtis obtained summary judgment with respect to his individual capacity. (Gable's claim against Heritage Church Builders, Inc. was not subjected to summary judgment proceedings). Lynda Curtis, the Bank, and Ronald Keeling also obtained summary judgment. This appeal ensued.

## DECISION

### *Appellate Jurisdiction—Timely Filing of Praecipe*

■ Gable's attorney, Miriam Rich, filed the complaint initiating this case in May of 1995, at which time she had listed a Greenwood, Indiana address. On November 1, 1995, Rich filed notice of the change of her address with the clerk of the trial court as required by Ind.Trial Rule 3.1(E). The Chronological Case Summary (CCS) sets out Rich's new Indianapolis address correctly and in its entirety. On November 28, 1995, the trial court entered the summary judgments which are the subjects of this appeal.

On December 28, 1995, Gable filed a timely motion to correct error. Rich had listed her new Indianapolis address at the bottom of the motion. The trial court denied the motion on January 5, 1996. The CCS entry indicated:

01–05–96 ... the court having reviewed the case now finds that the Motion to Correct Errors should be denied for lack of new evidence presented. (See order) *Clerk to notify

NOTIFIED 01–09–96 ww. (Reissued a copy to Atty. Rich on 03–13–96 ww.)

02/12/96 No service by mail on 01/09/96 to Miriam Rich. Insufficient address.

As indicated by the CCS, the notice that the motion to correct error had been denied did not reach Rich due to an "insufficient address."

As Rich had not heard anything regarding the motion to correct error, she assumed that it had been deemed denied by operation of T.R. 53.3. (This trial rule provides that a motion to correct error is deemed denied 45 days after it is filed where no ruling is made and no hearing has been set). Rich filed the praecipe to initiate this appeal on March 11, 1996, within 30 days of the date she had thought that her motion to correct error had been deemed denied. After learning that the trial court had denied the motion on January 5, 1996, and thus, the praecipe filed March 11, 1996 was untimely, Rich requested relief from the trial court pursuant to T.R. 72(E) which reads:

> **Effect of Lack of Notice.** Lack of notice, or the lack of the actual receipt of a copy of the entry from the Clerk shall not affect the time within which to contest the ruling, order or judgment, or authorize the Court to relieve a party of the failure to initiate proceedings to contest such ruling, order or judgment, except as provided in this section. When the mailing of a copy of the entry by the Clerk is not evidenced by a note made by the Clerk upon the Chronological Case Summary, the Court, upon application for good cause shown, may grant an extension of any time limitation within which to contest such ruling, order or judgment to any party who was without actual knowledge, or who relied upon incorrect representations by Court personnel. Such extension shall commence when the party first obtained actual knowledge and not exceed the original time limitation.

The trial court granted Gable the relief provided under this rule, and the appeal proceeded in due course.

Bank and Curtis argue that the trial court erred by granting Gable T.R. 72(E) relief because the CCS shows that notice of the denial of the motion to correct error had been mailed, citing *Collins v. Covenant Mutual Insurance Company,* 644 N.E.2d 116 (Ind.1994). *See also Minnick v. Minnick,* 663 N.E.2d 1226 (Ind.Ct.App.1996). These cases have interpreted the plain language of T.R. 72(E) as providing that, where the CCS affirmatively evidences that notice of the final judgment has been mailed by the clerk, the trial court lacks the authority to relieve a party from the consequences of failing to timely file a praecipe. *Id.* 644 N.E.2d at 118, 663 N.E.2d at 1228.

The present case is clearly distinguishable from the cases cited above because the CCS demonstrates more than mere mailing of the notice by the clerk. The CCS affirmatively demonstrates that Rich did not receive the notice because it had been insufficiently addressed. Moreover, the CCS affirmatively demonstrates that Rich had provided the clerk with her correct address as required under T.R. 3.1(E).

Obviously, when service is to be made by mail, the papers must be deposited in the United States mail *addressed to the person on whom they are being served,* with postage prepaid. *See* T.R. 5(B)(2) (Emphasis added). In *Comer v. Gohil,* 664 N.E.2d 389, 392 (Ind. Ct.App.1996), *trans. pending,* a medical malpractice plaintiff attempted to file her proposed complaint with the Department of Insurance by mail. However, it was returned by the post office "postage due" because she had failed to affix a sufficient amount of postage. We held that the responsibility for affixing a sufficient amount of postage rested with the person doing the mailing, and therefore, a mailing with insufficient postage did not achieve "filing" by mail. *Id.* at 392.

Similarly, under the present circumstances, we hold that the clerk's mailing of notice of the denial of the motion to correct error with an insufficient address did not constitute a "mailing" as contemplated under T.R. 72(E). Gable did not have actual notice that the motion to correct error had been denied and showed good cause for relief under the trial rule. Accordingly, the trial court did not err in giving Gable an extension in which to file the praecipe initiating this appeal, and we find no error.

## Summary Judgment Proceedings

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. *American Family Mutual Insurance Co. v. Dye*, 634 N.E.2d 844, 846 (Ind.Ct.App.1994), *trans. denied.* We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Cloverleaf Apartments, Inc. v. Town of Eaton*, 641 N.E.2d 665, 667 (Ind.Ct.App.1994). Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as· a matter of law. Ind.Trial Rule 56(C); *Heck v. Robey*, 659 N.E.2d 498, 500 (Ind.1995). Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. *Seufert v. RWB Medical Income Properties I Ltd. Partnership*, 649 N.E.2d 1070, 1072 (Ind.Ct. App.1995). Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the non-movant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. *Liberty Mutual Insurance Company v. Metzler*, 586 N.E.2d 897, 900 (Ind.Ct.App. 1992), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993).

## I.

### Roger Curtis—Personal Liability for Fraud

Gable sued Roger Curtis in his individual capacity (in addition to his corporation, Heritage Church Builders, Inc.) alleging that Curtis had committed the tort of fraud by inducing them to enter into the construction management contract by giving them a false estimate of the cost of building the home. The trial court entered summary judgment in favor of Curtis in his individual capacity

ruling that the corporate veil had not been pierced as a matter of law.[1]

Gable asserts that the corporate veil does not insulate Roger Curtis from personal liability for fraud. We agree. It is well-settled that a corporate officer cannot escape liability for fraud by claiming that he acted on behalf of the corporation when that corporate officer personally participated in the fraud. *Stepp v. Duffy*, 654 N.E.2d 767, 773 (Ind.Ct.App.1995), *trans. denied; American Independent Management Systems, Inc. v. McDaniel*, 443 N.E.2d 98, 103 (Ind.Ct.App. 1982).

Curtis, the president, director, and shareholder of Heritage Church Builders, Inc., personally participated in the alleged fraud. Therefore, we reverse the summary judgment entered in favor of Roger Curtis in his individual capacity with respect to Gable's claim of fraud.

## II.

### Intentional Infliction of Emotional Distress—Telephone Calls

Jodi Gable requests an award of damages to compensate her for the emotional distress she suffered as a result of the seven phone calls she received from Lynda Curtis. Indiana recognizes the tort of the intentional infliction of emotional distress as follows: "one who by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to another is subject to liability for such emotional distress." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991) (Adopting the *Restatement (Second) of Torts* § 46 (1965)); *Watters v. Dinn*, 633 N.E.2d 280, 292 (Ind.Ct.App.1994). The basis of this tort is the intent to harm one emotionally. *Id.*

The comments to § 46 of the *Restatement* read:

> · *d. Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It

---

1. Trial court findings in summary judgment proceedings merely afford the reviewing court a statement of reasons for the trial court's actions and serve no other purpose. *Dague v. Fort Wayne Newspapers, Inc.*, 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans. denied.*

has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Restatement (Second) of Torts § 46 at 72–73.* We have examined a great number of cases from other jurisdictions including the annotations published in both the *Appendix to the Restatement (Second) of Torts § 46* as well as those collected in the Annotation, *Modern Status of Intentional Infliction of Mental Distress as Independent Tort; 'Outrage,'* 38 A.L.R.4th 998 (1985). We hold that summary judgment was correctly entered on this count of the complaint because Lynda Curtis' conduct in making the telephone calls in question, while perhaps unreasonable, was not sufficiently outrageous, as a matter of law, to be actionable in tort. *See Haller v. Phillips,* 69 Ohio App.3d 574, 591 N.E.2d 305, 307–08 (1990) (A single phone call in which the caller used rude and abusive language

was insufficient to state a cause of action, and evidence that wife was upset by the call was insufficient to establish the serious emotional distress required in a prosecution for the intentional infliction of emotional distress); *Gall v. Great Western Sugar Co.,* 219 Neb. 354, 363 N.W.2d 373, 377–78 (1985) (Telephone call from insurance representative of husband's employer who informed pregnant wife regarding husband's uncertain employment prospects, insurance coverage, and the fact that he might lose his hand, was not so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious and utterly intolerable in a civilized community); *Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 462 N.E.2d 392, 394–95 (1984) (Conduct of insurance representative during telephone conversations regarding settlement negotiations with plaintiff did not reach the level of extreme and outrageous conduct necessary to sustain cause of action for intentional or reckless infliction of emotional distress; however, threats of violence made by a representative of an automobile rental agency over the phone were held to be sufficient); *Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 650 P.2d 496, 500–01 (1982) (Collection agency's conduct, consisting of making six phone calls over three-month period and using abusive language resulting in debtor being upset, crying, and having difficulty sleeping, were not sufficient as a matter of law to sustain action for intentional infliction of emotional distress); *But see, Brown v. Manning,* 764 F.Supp. 183, 187–88 (M.D.Ga.1991) (Abusive and obscene language, including racial epithets, made by insurance examiner during telephone calls did rise to the level of outrageousness and egregiousness necessary to state cause of action for intentional infliction of emotional distress). The above cases may be distinguished from those involving obscene or harassing phone calls where the sole purpose of the call or calls was to inflict emotional distress. *See Flatley v. Hartmann,* 138 A.D.2d 345, 525 N.Y.S.2d 637, 638 (1988) ("Hang up" calls perpetrated even after criminal conviction for making same were actionable); *Ruple v. Brooks,* 352 N.W.2d 652, 654–55 (S.D.1984) (Vulgar, sexually ori-

ented phone calls for which caller received criminal convictions were also actionable).

In the present case, the phone calls made by Lynda Curtis to Jodi Gable were made in the context of the construction dispute. Jodi Gable has not alleged that Curtis employed obscene language or that she expressly threatened violence. The large number of phone calls made is explained, whether or not justified, by the fact that Gable repeatedly hung up on Curtis. While Lynda Curtis' conduct in making the phone calls may have been unreasonable and abusive, it was not sufficiently outrageous to state a cause of action for the intentional infliction of emotional distress. Therefore, we find no error in the trial court's entry of summary judgment on this count.

### III.

#### *Fraud by Bank*

The essential elements of actual fraud are: 1) a material representation of past or existing fact which 2) is made with knowledge or reckless ignorance of its falsity which 3) causes reliance to the detriment of the person relying upon it. *Stevens v. Butler,* 639 N.E.2d 662, 666 (Ind.Ct.App.1994), *trans. denied.* Projections regarding future expectations are not actionable as fraud because they are mere statements of opinion rather than statements of past or existing facts. *Pugh's IGA, Inc. v. Super Food Services, Inc.,* 531 N.E.2d 1194, 1198–99 (Ind.Ct.App.1988), *trans. denied.*

In the present case, Gable concedes that Keeling thought that his statement, "Roger is good with his budgets" was true. Gable has not designated any evidence that any of Curtis' other construction projects had gone over budget which might support an inference that Keeling made the statement with reckless ignorance of its falsity. In fact, Gable hired Curtis before going to the Bank about a loan based upon Curtis' reputation and the recommendations he had received from others.

Keeling's representation simply was not, as a matter of law, the stuff of which a fraud recovery is made. *See Rice v. Strunk,* 670 N.E.2d 1280, 1289 (1996). Thus, with respect to the claim of fraud against Keeling and the Bank, Gable has not overcome the presumption that the trial court's entry of summary judgment was valid and we find no error.

### CONCLUSION

We reverse the entry of summary judgment with respect to Gable's claim against Roger Curtis, individually, for fraud as outlined under Issue I. In all other respects, we affirm.

HOFFMAN and BARTEAU, JJ., concur.