Suzanne K. BRADLEY, Appellant–Plaintiff,

v.

Carmen HALL, Appellee–Defendant.

No. 30A01–9906–CV–202.

Court of Appeals of Indiana.

Dec. 14, 1999.

Greg Bekes, Grotke & Bekes, Greenwood, Indiana, Attorney for Appellant.

Donald S. Smith, R. Troy Mulder, Riley Bennett & Egloff, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Suzanne K. Bradley appeals the grant of summary judgment in favor of her former supervisor, Carmen Hall, on Bradley's complaint for intentional infliction of emotional distress and intentional interference with her relationship with Farm Bureau Insurance ("Farm Bureau"), her employer.

We reverse and remand.

### ISSUES

Bradley raises four issues which we consolidate and restate as:

1. Whether Hall negated an element of Bradley's intentional interference with her contractual relationship claim.

2. Whether Hall negated an element of Bradley's intentional infliction of emotional distress claim.

### FACTS

Bradley was employed by Farm Bureau from 1966 until her termination in 1996, at which time she was one of four supervisors in her department. For approximately twenty years, Hall was Bradley's immediate supervisor. During that time, Bradley claims that Hall harassed her, shouted at her and criticized her in front of other employees. In 1992, Bradley complained about Hall to vice-president Rick Smith. Hall blamed Bradley for a poor performance review, and the relationship between the two women deteriorated. Hall continued to reprimand Bradley about her work. On several occasions Hall inquired about Bradley's menopause and once she asked if Bradley's husband was sexually impotent due to his diabetes. Hall also told Bradley that her supervisory position might be eliminated, and she encouraged Bradley to apply for other positions within the company. In July of 1995, Bradley took a medical leave due to depression. She received a medical release in January of 1996 and, at that time, notified Farm Bureau that she wanted to return to work. Although Farm Bureau advised her it would consider her for appropriate openings, Bradley remained on leave until July of 1996, when her employment was terminated pursuant to company policy.

Meanwhile, Bradley learned that the company had decided to retain her position at a frozen pay level. In October of 1996, Bradley filed suit against Hall for invasion of privacy, intentional interference with her "business relationship" and intentional infliction of emotional distress. Bradley averred that, "As a result of Hall's misconduct, Bradley suffered severe emotional distress resulting in physical illness, extended care by mental health professionals, and the loss of her employment at Farm Bureau." Record at 11. Based largely upon Bradley's deposition, Hall moved for summary judgment on all counts. In granting that motion, the trial court found that Bradley had failed to present evidence on all elements of her intentional interference claim, including the requirement that Hall acted "illegally." The court further found there was no evidence that Hall intended to harm Bradley emotionally or that she intruded upon

Bradley's privacy.[1] Bradley filed an unsuccessful motion to correct error. She now appeals.

## DISCUSSION AND DECISION

### Standard of Review

■ When reviewing the grant of a summary judgment motion, we apply the same standard used by the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind.1998). All facts and reasonable inferences drawn therefrom are construed in favor of the non-moving party. *Id.* Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Harvest Life Ins. Co. v. Getche,* 701 N.E.2d 871, 874 (Ind.Ct. App.1998), *trans. denied.* This is true even if the court believes the non-moving party will not succeed at trial. *Id.*

■ Where, as here, the defendant is the moving party, the defendant must demonstrate that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense which bars the plaintiff's claim. *Dible v. City of Lafayette,* 713 N.E.2d 269, 272 (Ind.1999) (citations omitted). If the defendant sustains this burden, the plaintiff may not rest upon the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Winkler v.*

1. Bradley does not appeal the grant of summary judgment in favor of Hall on her invasion of privacy claim.

2. Bradley correctly argues that the trial court heightened her burden when it concluded, "Any plaintiff must establish each element essential to her claim of tortious interference with a business relationship to defeat summary judgment." Record at 345. In that conclusion, the court cited *Watson Rural Water Co. v. Indiana Cities Water Corp.,* 540 N.E.2d 131, 139 (Ind.Ct.App.1989), *trans. de-*

*V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1235 (Ind.1994) (citing Ind. Trial Rule 56(E)). Specific findings and conclusions are not required in the summary judgment context and, although they offer valuable insight into the trial court's reasoning, they are not binding on this court. *Golitko v. Indiana Dep't of Correction,* 712 N.E.2d 13, 15 (Ind.Ct.App.1999), *trans. denied.*

### Issue One: Intentional Interference with a Contractual Relationship

■ Bradley contends that summary judgment was erroneously entered on her claim for intentional interference with her relationship with Farm Bureau. The elements of that tort are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. *See Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 124 (Ind.Ct. App.1992). The trial court determined that the tort also requires that the defendant act "illegally" and granted summary judgment, in part, because it found Bradley did not establish that "element." Bradley now argues that she was not required to show illegality and that Hall failed to negate any of the five elements of her claim.[2]

Both parties characterize Bradley's claim as one for intentional interference

*nied,* which in turn cites *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The federal summary judgment standard enunciated in *Celotex,* however, has been expressly rejected by our supreme court. *Jarboe v. Landmark Community Newspapers of Indiana, Inc.,* 644 N.E.2d 118, 123 (Ind.1994). In this review of the grant of summary judgment, we independently review the materials presented to the trial court and apply the standard articulated above.

with a business rather than a contractual relationship, presumably, because Bradley was an at-will employee. Our court has stated that "[a]nother element which is discussed with regard to proof of this cause of action is that a defendant acted illegally in achieving his end." *Harvest Life*, 701 N.E.2d at 876; *see Biggs v. Marsh*, 446 N.E.2d 977, 983 (Ind.Ct.App. 1983).[3] In *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 530 N.E.2d 125, 126–27 (Ind.Ct.App.1988), our court decided that an at-will employee could not recover absent illegal conduct. Judge Ratliff dissented, stating that the majority had adopted a position that was unjust and unreasonable. *Id.* at 127–28 (Ratliff, C.J., dissenting).

Our supreme court agreed with Judge Ratliff, reasoning that "[t]he parties in an employment at will relationship have no less of an interest in the integrity and security of their *contract* than do the parties in any other type of *contractual relationship*." *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284 (Ind.1991) (emphasis added). Without mentioning illegality, the court concluded that a claim for tortious interference with an employment relationship can be maintained upon a contract terminable at will. *Id.* at 285;[4] *cf.* RESTATEMENT (SECOND) OF

TORTS § 766A (interference need be "improper"). Thus, the court treated the cause of action as one for intentional interference with a contractual rather than a business relationship. Following *Bochnowski*, we hold that Bradley stated a claim for intentional interference with a contractual relationship. Bradley was not required to plead or prove illegality in order to sustain her cause of action, and Hall was not entitled to summary judgment on that basis.

■ Bradley also asserts that Hall failed to negate any of the five elements of her cause of action. In her answer, Hall averred that Bradley's claim is barred because she was acting within the scope of her employment and, thus, under a qualified privilege. *See Kiyose v. Trustees of Indiana University*, 166 Ind.App. 34, 333 N.E.2d 886 (1975) (liability does not accrue for performance of acts lying within scope of agent's duties). However, Hall designates no evidence regarding the nature and scope of her duties, and we are not persuaded that at all relevant times she was acting as an agent of Farm Bureau. *Cf. Leslie v. St. Vincent New Hope, Inc.*, 873 F.Supp. 1250, 1255 (S.D.Ind.1995) (all actions attributed to former supervisor were "obviously" within the scope of her duties).[5] Hall interrogated Bradley about

3. "Illegality" is not a term of art, and no court has defined the meaning of "illegal" as used in this context. The Restatement suggests that interference with prospective business relations requires more blameworthy means be used than does interference with contractual relations. *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 542 n. 6 (7th Cir.1986) (citing RESTATEMENT (SECOND) OF TORTS § 766(B), cmt. e).

4. The court further stated that the plaintiff bringing such an action must be prepared to show that the defendant interferer acted intentionally and without a legitimate business purpose. *Id.* We read this statement to require the plaintiff to allege and prove that the conduct was not justifiable rather than to require the defendant to allege and prove justification as an affirmative defense.

5. In determining whether a defendant's conduct in intentionally interfering with a con-

tract is justified, the following factors are considered:

  (a) the nature of the defendant's conduct;
  (b) the defendant's motive;
  (c) the interests of the plaintiff with which the defendant's conduct interferes;
  (d) the interests sought to be advanced by the defendant;
  (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;
  (f) the proximity or remoteness of the defendant's conduct to the interference; and
  (g) the relations between the parties.

*Winkler*, 638 N.E.2d at 1235 (quoting RESTATEMENT (SECOND) OF TORTS § 767 (1977)). The weight to be given each consideration may differ from case to case, but the overriding question is whether the defendant's conduct has been fair and reasonable under the circumstances. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 767, cmt. j).

intimate aspects of her personal life and allegedly misrepresented the company's intentions regarding the security of her position. Bradley also testified that she believed Hall enjoyed seeing her come "unglued." Record at 93. Thus, a fact finder must determine whether there was an intentional and unjustified interference.

■ In *Fields v. Cummins Employees Fed. Credit Union*, 540 N.E.2d 631, 640–41 (Ind.Ct.App.1989), an employee brought suit against her supervisor for "interference with an advantageous business relationship," alleging that the supervisor's conduct "resulted in an oppressive and hostile working environment" which had interfered with her relationship with her employer. *Id.* As a result of her supervisor's actions, the employee allegedly accepted a demotion. *Id.* at 641. We reversed the trial court's grant of summary judgment in favor of the supervisor, holding that there were genuine issues concerning whether the supervisor's conduct contributed to the employee's decision to accept the demotion. *Id.* In this case, too, there is a factual dispute whether Hall's conduct, if intentional and unjustified, contributed to Bradley's medical leave and eventual termination. Thus, summary judgment on this issue is inappropriate.

### Issue Two: Intentional Infliction of Emotional Distress

■ Bradley also asserts that there is a factual dispute with respect to her intentional infliction of emotional distress claim which precludes summary judgment in favor of Hall. The tort arises when a defendant (1) engages in "extreme and outrageous" conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind.1997) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)).[6] It is the intent to harm one emotionally that forms the basis for the tort. *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991).

■ Here, Bradley challenges the trial court's finding that she "offered no evidence that [Hall] intended to harm her emotionally." Record at 343. Bradley claims that the trial court improperly weighed the designated evidence and that, construing the evidence in her favor, there is at least a factual dispute concerning Hall's intent to harm. In her deposition, Bradley stated that she believed Hall acted because she enjoyed seeing Bradley "come unglued" and getting Bradley "upset." Record at 93. Hall's pattern of conduct and Bradley's testimony permit an inference that Hall acted with the intent to harm emotionally. But that is not enough.

■ Liability for intentional infliction of emotional distress is found only if there is extreme and outrageous conduct. The comments to the Restatement, Section 46 read:

d. *Extreme and outrageous conduct.* The cases thus far decided have found

---

**6.** The parties dispute whether one can act recklessly and still be liable for "intentional" infliction of emotional distress. The Restatement explains that the tort occurs

where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow.

RESTATEMENT (SECOND) OF TORTS § 46, cmt. i. Section 500, to which comment i refers, defines "reckless disregard of safety" as follows:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

The "Special Note" following this section states that the conduct described in Section 500 is often called "wanton or wilful misconduct." RESTATEMENT (SECOND) OF TORTS, § 500 (1965).

liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

RESTATEMENT (SECOND) OF TORTS § 46 (quoted in *Gable v. Curtis*, 673 N.E.2d 805, 809 (Ind.Ct.App.1996)). What constitutes "extreme and outrageous" conduct depends, in part, upon prevailing cultural norms and values. In the appropriate case, the question can be decided as a matter of law. *See, e.g., Conwell v. Beatty*, 667 N.E.2d 768, 775–77 (Ind.Ct.App.1996) (no outrageous conduct where sheriff announced deputy's arrest at press conference and refused to assist deputy in completing retirement forms); *Gable*, 673 N.E.2d at 809–11 (no outrageous conduct where contractor's wife phoned purchaser seven times in one hour, screaming, threatening to repossess home and to come over, and stating repeatedly that the purchasers "would pay"). In this case, however, we decline to make that determination.

Today the print and electronic media openly discuss bodily functions and dysfunctions as a matter of course, but these can be personal and private topics when they concern the health or physical condition of a particular individual. Hall's conduct may have been condescending, intrusive and offensive. Further, Hall may have misled Bradley about her job security. Reasonable persons may differ on the questions of whether Hall's conduct was extreme and outrageous and, if so, whether that conduct caused Bradley to suffer severe emotional distress. Accordingly, Hall was not entitled to summary judgment on Bradley's claim for the intentional infliction of emotional distress.

## CONCLUSION

Construing all designated evidence in favor of Bradley, we conclude that there are conflicting inferences concerning whether, without justification, Hall intentionally interfered with Bradley's employment contract and whether any unjustified interference resulted in damages to Bradley. In addition, there are questions of fact with respect to whether Hall engaged in extreme and outrageous conduct that intentionally or recklessly caused Bradley to suffer severe emotional distress. Thus, we reverse the entry of summary judgment in favor of Hall on Bradley's claims for intentional interference with her contractual relationship and for the intentional infliction of emotional distress.

Reversed and remanded.

STATON, J., and RUCKER, J., concur.