


FILED
Jun 26 2024, 9:10 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Christopher Lewis Laux,

*Appellant-Plaintiff*

v.

Maureen Baker, Daria Walpole, Giles Laux, Terry Laux, Teresa Laux, Amy Laux, Nicole Sholly,

*Appellees-Defendants*

---

June 26, 2024

Court of Appeals Case No.
23A-CT-2620

Appeal from the St. Joseph Superior Court

The Honorable Jamie C. Woods, Judge

Trial Court Cause No.71D06-2305-CT-249

---

**Opinion by Judge Foley**
Judges Riley and Brown concur.

**Foley, Judge.**

Christopher Lewis Laux ("Laux") sued his seven siblings ("the Defendants"), claiming liability for defamation and several other torts. The Defendants moved to dismiss under Trial Rule 12(B)(6), arguing Laux did not satisfy the heightened pleading standard for defamation and otherwise did not state a viable claim. The trial court granted the motion, and Laux appeals. We affirm.

## Facts and Procedural History

In May 2023, Laux—an attorney—filed a complaint against the Defendants[1] alleging (1) defamation, (2) tortious interference with a business relationship, (3) intentional infliction of emotional distress, (4) invasion of privacy, and (5) entitlement to punitive damages. The allegations related to Laux's years of service as an attorney for Ralph William Laux ("Father"), who is the father of Laux and the Defendants, and who is now the subject of guardianship proceedings. Laux claimed he had a "Power of Attorney over [Father]" and "executed a farm trust for . . . [F]ather" in the fall of 2018. Appellant's App. Vol. 2 p. 14. Laux claimed the Defendants were upset because they would not "get[] their 'inheritance' immediately upon the death of [Father] due to the establishment of the farm trust[.]" *Id.* at 15. Several of Laux's claims hinged on the following allegation: "The Defendants have told Laux's children, extended

---

[1] The Defendants are Maureen Baker, Daria Walpole, Giles Laux, Terry Laux, Teresa Laux, Amy Laux, and Nicole Sholly.

family, current clients, [a] guardian ad litem in [a] guardianship proceeding, and stated under [o]ath, that Laux was trying to 'steal' [Father's] farm." *Id.* Laux alleged that this statement—i.e., that Laux "was attempting to 'steal the farm,'" *id.*—was "malicious, defamatory, and false." *Id.* Laux claimed he was "severely damaged" because the statement "directly affect[ed] Laux's work" and "family." *Id.* at 13. Laux further alleged that the Defendants "appear[ed] to be working in consortium," *id.* at 12, and had a "larger plot to destroy Laux's livelihood" that involved filing "a malicious, defamatory, and frivolous grievance" with the Indiana Disciplinary Commission regarding his representation of Father, *id.* at 14. Laux alleged the grievance was designed "to harm his long-standing attorney-client relationship with [Father]." *Id.* at 16. Laux further alleged the Defendants "deceptively and fraudulently obtained a temporary guardianship" over Father, *id.*, and that their actions "lock[ed] [Father] down to keep Laux from [Father]," *id.* at 17. Among Laux's other allegations was that the Defendants "inva[ded] . . . privileged communications between Laux and [Father]" *Id.* at 16. Laux further asserted that the "[t]he purposeful actions taken by [the Defendants] were meant to ruin and damage Laux personally, and to ruin and damage Laux's business and livelihood," and that the Defendants' "malicious actions . . . did cause Laux damage." *Id.*

[3] In July 2023, the Defendants moved to dismiss under Trial Rule 12(B)(6), arguing that Laux "has not met Indiana's standards for pleading defamation with specificity under Indiana law, has failed to allege essential elements of the claims asserted, and has asserted a claim that is not a recognized cause of action

in Indiana." *Id.* at 23. In a responding brief, Laux stood on the allegations in his complaint. Laux also argued that "[a]n objective reasonable person in considering the allegations . . . as true . . . could only come to one conclusion: [Laux] . . . has been severely damaged by [the] [D]efendants[.]" *Id.* at 38.

[4] The trial court held a hearing. At the hearing, Laux again stood on the allegations in the complaint. *See* Tr. Vol. 2 pp. 9–10. At one point, the trial court initiated the following exchange regarding the defamation claim:

| [Trial court]: | Could you point me to the paragraphs you -- you believe support these -- that there's specific allegations of defamation in the complaint? The specific allegations of defamatory conduct, what paragraphs are those? |
|---|---|
| [Laux]: | Twenty-five, 26, 27, 28. There may be more. |
| [Trial court]: | Even -- all right. So let's assume those are specific allegations of defamatory conduct. Do you agree that the complaint has to identify the specific defendant speaker who made each of the alleged statements, the specific statements? . . . [T]here's a particularity as to statements and a particularity as to the person that made the statement, do you agree with that . . . ? |
| [Laux]: | My response cannot be made in total because it brings in factual matters outside the 12(B)(6) hearing today. It is my legal opinion that there [are] more than sufficient allegations made in this complaint for th[e] [D]efendants . . . to know |

exactly what it refers to. Because they've all lived it.

> But without getting [into] any information outside the 12(B)(6) for here today, all of . . . these arguments by [the] opposing lawyer here today can be easily ferreted out, all these details, through what is meant to be ferreted out, it is discovery.

*Id.* at 11–12. Shortly thereafter, Laux said the following to the trial court:

> [I]n my legal opinion, there is certainly enough in this complaint for anyone reading it to know that there's been tremendous wrongdoing by the[] [D]efendants, and anyone who has taken this complaint in its most favorable light to the plaintiff, in paragraph 27, the claim that Laux was attempting to . . . [']steal the farm,['] is in sharp juxtaposition [to] the disciplinary complaint, which protests . . . not getting their inheritance.

> Your Honor, th[ese] seven defendants all know -- maybe their lawyer doesn't know because the lawyer has not been told -- but . . . the [D]efendants know what exactly is stated in this complaint.

*Id.* at 13.

[5] The trial court took the matter under advisement. The trial court later issued a written order granting the Defendants' motion to dismiss for failure to state a claim. The trial court generally stated that, "[e]ven though Indiana law disfavors dismissal," Laux's complaint was subject to dismissal because Laux "failed to assert essential elements of his causes of action." *Id.* at 40. The trial court also provided a count-by-count analysis, ultimately concluding that the

allegations were deficient. After the court issued its order, Laux sought an extension of time to amend the complaint. He ultimately declined to amend and instead pursued this appeal of the trial court's decision. *Cf. DeCola v. Steinhilber*, 207 N.E.3d 440, 447 (Ind. Ct. App. 2023) (noting that when a plaintiff chooses to appeal rather than correct the pleading, the order of dismissal under Trial Rule 12(B)(6) becomes a final judgment on the merits).

## Discussion and Decision

## I. Standard of Review

Laux challenges the dismissal of his complaint under Trial Rule 12(B)(6). "A motion to dismiss under [Trial] Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006). This type of motion presents a pure question of law. *See Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 901 (Ind. 2024). Thus, "[a]ppellate review . . . is de novo." *Id.* On appeal, we "accept[] the alleged facts as true, drawing every reasonable inference in favor of the non-moving party." *Id.* Dismissal is appropriate only "when it is 'apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances.'" *Id.* (quoting *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*). In general, we "view[] motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of actions on their merits." *McQueen*, 711 N.E.2d at 65. We

may nevertheless "affirm a trial court's grant of a motion to dismiss if it is sustainable on any basis in the record." *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015).

[7] Before turning to the pleadings, we address the Defendants' contention that Laux waived his appellate arguments by failing to present them to the trial court. The Defendants essentially argue that, because Laux generally stood on his complaint and did not develop detailed written or oral arguments when responding to the motion to dismiss, Laux should be precluded from providing more detailed arguments on appeal regarding the adequacy of the complaint. We acknowledge the Defendants' position. However, under the circumstances, we decline to identify waiver and instead resolve the appeal on the merits. *See Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (noting that we generally prefer to resolve cases on the merits instead of on procedural grounds such as waiver).

## II. Adequacy of the Pleadings

[8] The trial court concluded that Laux failed to adequately plead his claims of defamation, tortious interference with a business relationship, intentional infliction of emotional distress, invasion of privacy, and entitlement to punitive damages. Herein, we address in turn the adequacy of each set of allegations.

[9] We begin our analysis by referring to Trial Rule 8(A), which provides that, "[t]o state a claim," the complaint generally "must contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for relief to which the pleader deems entitled." Trial Rule 8(E) adds

that "[e]ach averment . . . shall be simple, concise, and direct," and that "[n]o technical forms of pleading . . . are required." Moreover, Trial Rule 8(F) provides that "all pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." These "liberal" pleading requirements are rooted in principles of notice pleading. *KS&E Sports v. Runnels*, 72 N.E.3d 892, 901 (Ind. 2017). Under principles of notice pleading, the role of the complaint is to "put the defendant on notice concerning why it is potentially liable and what it stands to lose." *Id.* (quoting *Noblesville Redev. Comm'n v. Noblesville Assocs. Ltd. P'ship*, 674 N.E.2d 558, 564 (Ind. 1996)). To satisfy this standard, the plaintiff generally need not "state all the elements of a cause of action." *State v. Rankin*, 294 N.E.2d 604, 606 (Ind. 1973). Rather, the plaintiff "need only plead the operative facts involved in the litigation." *Id.* As the Indiana Supreme Court has explained, to the extent a defendant would like to "clarify the theory and basis for the cause of action," the Indiana Rules of Trial Procedure offer "[o]ther means less drastic than dismissal of the action," such as a Trial Rule 12(E) motion for a more definite statement and use of "our very broad discovery rules[.]" *Id.*

[10] Laux argues the trial court misapplied the law to the extent it suggested Laux improperly failed to recite the elements of each theory for relief. He points out that, under Indiana's notice pleading standard, the plaintiff "need only plead the operative facts involved in the litigation." *Id.* We agree that Laux was not obligated to recite elements or delineate theories. However, for the reasons discussed herein, we conclude the complaint was deficient in other respects.

## A. Defamation

"To establish a claim of defamation, a 'plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages.'" *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (quoting *Trail*, 845 N.E.2d at 136). In general, a statement is defamatory if it "tends 'to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person.'" *Id.* (quoting *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007)). Furthermore, defamation per se "arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Id.*

We have a "heightened notice pleading standard" for a claim of defamation. *Taylor v. Antisdel*, 185 N.E.3d 867, 874 (Ind. Ct. App. 2022), *trans. denied*. Under this heightened standard, the plaintiff must specifically "set out the alleged defamatory statements[s] in the complaint[.]" *Ali v. Alliance Home Health Care LLC*, 53 N.E.3d 420, 428 (Ind. Ct. App. 2016) (adding that "[w]hen specific statements that are alleged to be defamatory have not been sufficiently identified in a plaintiff's complaint, an award of summary judgment for the defendant is proper") (quoting *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014), *trans. denied*). Furthermore, when there are multiple defendants, the plaintiff "must specifically attribut[e] each statement to each separately named defendant." *Taylor*, 185 N.E.3d at 874. As the Indiana

Supreme Court explained, "[t]here is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant." *Trail*, 845 N.E.2d at 137. That is, "[t]he court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory." *Id.* Moreover, "[t]he defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses." *Id.*

[13] At the hearing, Laux informed the trial court that the alleged defamatory statements were in paragraphs "[t]wenty-five, 26, 27, [and] 28," and he noted "[t]here may be more." Tr. Vol. 2 p. 11. The referenced paragraphs state:

> 25. During the guardianship proceedings, the [D]efendants made malicious, frivolous, and defamatory statements about Laux. The Guardian ad Litem appointed by the Court took statements from the [D]efendants. The Guardian ad Litem agreed that the "sum total of the materials [provided by the [D]efendants] about [Laux] was to disparage, vilify, and belittle [Laux]."
>
> 26. The Defendants have told Laux's children, extended family, current clients, the guardian ad litem in the guardianship proceeding, and stated under [O]ath, that Laux was trying to 'steal' [Father's] farm.
>
> 27. The claim that Laux was attempting to 'steal the farm' is in sharp juxtaposition [to] the disciplinary complaint, which protests . . . not getting their 'inheritance' immediately upon the death of [Father] due to the establishment of the farm trust; however, this claim of Laux trying to 'steal the farm' is equally, if not more so, malicious, defamatory, and false.

28. [The] Defendants['] malicious, defamatory, and frivolous grievance[,] and subsequent statements made to family, clients, court officials, and other government officials, were purposely and intentionally crafted to exclude any of Laux's good works, accomplishments, achievements, or even work done by Laux on [the] [D]efendants['] behalf.

App. Vol. 2 pp. 14–15.

[14] On appeal, Laux focuses on the following allegation, which the trial court determined did not satisfy the heightened pleading standard for defamation: "The Defendants have told Laux's children, extended family, current clients, [a] guardian ad litem in [a] guardianship proceeding, and stated under Oath, that Laux was trying to 'steal' [Father's] farm." Appellant's App. Vol. 2 p. 15. Laux argues this allegation satisfied the heightened pleading standard because (1) the allegation identified a specific defamatory statement (that Laux was trying to "steal" Father's farm), which has an implication of criminal or professional misconduct, and (2) the allegation was "clear as to which [of the Defendants] made this defamatory statement: all of them." Appellant's Br. p. 12. The Defendants, however, maintain that the complaint needed to be more specific to satisfy the heightened pleading standard for a claim of defamation. They argue that, although there is some specificity about what was purportedly said, the allegations remain so vague as to impede the preparation of a defense. The Defendants illustrate vagueness in Laux's assertion that "all of them" at some point told various individuals Laux was trying to steal the farm, arguing:

> Did all of the . . . Defendants, in unison, intone the word 'steal' to an assembly of all of Laux's children, extended family, current clients, and a guardian ad litem? Did the whole group of . . . Defendants visit and speak to each individual child, extended family member, current client, and guardian ad litem of Laux? Did every . . . Defendant visit every alleged hearer in a one-on-one session to discuss the 'steal'? When and where did any of this happen?

Appellees' Br. p. 11.

The Defendants direct us to *Ali*, where we concluded that the plaintiff failed to meet the heightened pleading standard for a claim of defamation. There, the plaintiff—an in-home health worker—alleged there were "conversations [in] which [several named individuals] . . . maliciously made certain slanderous false, malicious, and defamatory statements" to "certain persons" that the plaintiff "stole . . . pieces of jewelry on several occasions" from two of the plaintiff's clients. *Ali*, 53 N.E.3d at 429. In affirming summary judgment for the defendants, we noted that the allegation "d[id] not specifically identify the statements alleged to have been made by each of the several named individuals . . . [n]or d[id] it specify the persons to whom (or in front of whom) the alleged defamatory statements were published." *Id.* Indeed, although the allegation was specific in some respects—i.e., that specific individuals said the plaintiff stole jewelry from her clients—we ultimately concluded that the allegation "lack[ed] the specificity necessary to state a claim for defamation." *Id.*

Here, the Defendants argue that Laux's allegation is akin to the deficient allegation in *Ali*. We agree. At the hearing, Laux suggested the claim was

adequate because the Defendants subjectively "kn[e]w exactly what" Laux was referencing "[b]ecause they've all lived it," and it was therefore appropriate under the circumstances to require the Defendants to use discovery procedures to "ferret out . . . all th[e] details." Tr. Vol. 2 p. 11. Yet, the pleading must stand on its own, irrespective of the subjective knowledge of the Defendants. *Cf.* Trial Rule 8(A); *Trail*, 845 N.E.2d at 137 (noting that our heightened pleading standard for a claim of defamation is designed to not only avoid working a detriment on the defendant but also avoid "work[ing] a detriment on . . . the court[.]"). Although the allegation bears a modicum of specificity, we adhere to *Ali* and conclude that Laux's allegation about stealing the farm lacks the necessary specificity to state a claim of defamation and is prohibitively vague as to unfairly work a detriment on the trial court in addressing the claim, and the Defendants in attempting to prepare a defense to the claim. Moreover, because the farm-related claim was the most specific of Laux's allegations of defamation, we identify no error in the dismissal of the claim of defamation.

## B. Tortious Interference with a Business Relationship

[17] Generally, the elements of tortious interference with a business relationship are: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from [the] defendant's wrongful interference with the relationship." *McCollough v. Noblesville Schs.*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016), *trans. denied*. To be tortious, the wrongful conduct had to involve "some independent illegal act[.]"

*Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003). However, "[d]efamation . . . 'does not constitute illegal conduct for the purpose of determining whether one tortiously interfered with the business relationship of another.'" *McCollough*, 63 N.E.3d at 344 (quoting *Miller*, 11 N.E.3d at 961). When the claim is for tortious interference with a business relationship, rather than tortious interference with contractual relations, the claim seeks to remedy damages stemming from "interference with a prospective advantage." *Kiyose v. Trustees of Ind. Univ.*, 333 N.E.2d 886, 891 (Ind. Ct. App. 1975) (discussing the "parallel" development of torts related to interference with business matters).

[18]   Here, the trial court determined that Laux failed to state a claim of intentional interference with a business relationship because, among other things, Laux (1) "fail[ed] to properly allege what his business relationship [was] with [Father]," (2) "fail[ed] to allege that the Defendants had knowledge of a business relationship between Laux and [Father]," and (3) "d[id] not allege how [the Defendants'] conduct was intended to interfere with his business relationship with his [F]ather." Appellant's App. p. 41. We note, too, that there is no factual allegation indicating that Laux had the expectation of future business from Father such that Laux could have demonstrated damage. *Cf. Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. Ct. App. 1992) (indicating a claim of tortious interference was deficient because the pleading involved only "bald assertions of possible business opportunities"). On appeal, Laux likens his relationship with Father to that of employment "at will." *See* Appellant's Br. p. 16. Indeed, Laux argues as follows: "[Laux] acknowledges, despite the

long-standing business relationship, that his business relationship with [Father] would be considered 'at-will,' however, [Laux] and Father have a 'manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion.'" *Id.* (quoting *Truax v. Raich*, 239 U.S. 33, 38 (1915)). However, we find Laux's reliance on employment "at will" caselaw to be misplaced. We agree with the trial court that Laux failed to adequately state a claim of tortious interference with a business relationship.

## C. Intentional Infliction of Emotional Distress

[19] As the Indiana Supreme Court has explained, "[t]he definition of the tort of intentional infliction of emotional distress is that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress[.]'" *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (quoting Restatement (Second) of Torts § 46 (Am. Law Inst. 1965)). The Indiana Supreme Court added that "[i]t is the intent to harm one emotionally that constitutes the basis for the tort[.]" *Id.* Furthermore, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fox v. Franciscan Alliance, Inc.*, 204 N.E.3d 320, 329 (Ind. Ct. App. 2023) (quoting *Lachenman v. Stice*, 838 N.E.2d 451, 456–57 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied*. "What constitutes 'extreme and outrageous' conduct depends, in part, upon prevailing cultural norms and values." *Bradley v. Hall* 720 N.E.2d 747, 753 (Ind. Ct. App. 1999). Thus, a

claim of intentional infliction of emotional distress presents a question of fact to the extent "[r]easonable persons may differ" as to "whether [the] conduct was extreme and outrageous and, if so, whether that conduct caused [the plaintiff] to suffer severe emotional distress." *See id.* Nevertheless, "[i]n the appropriate case," these sorts of issues "can be decided as a matter of law." *Id.*

[20] Here, the trial court determined that Laux "fail[ed] to allege the first element" of "'extreme and outrageous conduct' by the Defendants." Appellant's App. Vol. 2 p. 42. On appeal, Laux argues that the trial court "invade[d] the province of the jury" by dismissing the claim of intentional infliction of emotional distress because reasonable persons could disagree as to whether the Defendants engaged in extreme or outrageous conduct. Appellant's Br. p. 20. As to the allegedly extreme or outrageous conduct, Laux focuses on allegations that the Defendants (1) "filed a frivolous disciplinary grievance with the Disciplinary Commission against [Laux]," which "goes to the heart of how [he] makes a living"; (2) maliciously invaded the attorney-client privilege by the "breach of privileged communications between Laux and [Father]"; (3) told Laux's clients and his own children that he "was trying to 'steal the farm'"; and (4) prevented Laux from "see[ing] or communicat[ing] with [F]ather/client minus a two-minute conversation eighteen (18) months ago." *Id.* at 19–20.

[21] Laux relies on *Bradley v. Hall*, 720 N.E.2d 747 (Ind. Ct. App. 1999), where we reversed an order granting summary judgment to the defendant on a claim of intentional infliction of emotional distress. In that case, the plaintiff alleged that her former supervisor had engaged in various forms of harassment for

"approximately twenty years." *Bradley*, 720 N.E.2d at 749. Specifically, the plaintiff claimed the defendant "harassed her, shouted at her[,] . . . criticized her in front of other employees," and began making inappropriate lines of inquiry—i.e., "inquir[ing] about [her] menopause" on several occasions and at one point "ask[ing] if [her] husband was sexually impotent due to his diabetes." *Id.* The defendant also "told [the plaintiff] that her supervisory position might be eliminated[.]" *Id.* On appeal, we identified a question of fact as to whether the defendant had engaged in extreme and outrageous conduct. *See id.* We observed that, "[t]oday[,] the print and electronic media openly discuss bodily functions and dysfunctions as a matter of course, but these can be personal and private topics when they concern the health or physical condition of a particular individual." *Id.* We ultimately characterized the alleged conduct as potentially "condescending, intrusive[,] and offensive," and we noted that the defendant "may have misled [the plaintiff] about her job security." *Id.* All in all, we concluded that summary judgment was improper because "[r]easonable persons may differ" as to "whether [the] conduct was extreme and outrageous[.]" *Id.*

[22] We find *Bradley* readily distinguishable. Whereas that case involved cavalier inquiries into distinctly personal and private topics—alongside other alleged workplace harassment that spanned two decades—the case at hand involves far less egregious allegations. Indeed, although there is nothing benign about the nature of the instant allegations, we ultimately conclude that, as a matter of law, the alleged conduct does not rise to the level of extreme and outrageous conduct to support a viable claim of intentional infliction of emotional distress.

## D. Invasion of Privacy

[23] The tort of invasion of privacy "encompasses four distinct injuries: (1) intrusion upon seclusion; (2) appropriation of likeness; (3) public disclosure of private facts; and (4) false-light publicity." *Cmty. Health Net., Inc. v. McKenzie*, 185 N.E.3d 368, 380 (Ind. 2022). On appeal, Laux argues the complaint contains factual allegations supporting recovery for both public disclosure of private facts and false-light publicity. These theories require "publicity" of information about the plaintiff. *See generally McKenzie*, 185 N.E.3d at 382. As we have explained, "there is no threshold number that constitutes 'a large number' of persons." *McKenzie*, 185 N.E.3d at 382. Rather, "[t]he facts and circumstances of each case must be taken into consideration in determining whether the communication gave sufficient 'publicity'" to support these sorts of claims. *Id.*

[24] At times, Laux focuses on allegations that the Defendants submitted a disciplinary grievance against him. Yet, Laux's complaint—together with an Exhibit attached thereto—indicates that the "grievance was dismissed on its face as not raising a substantial question of misconduct[.]" Appellant's App. Vol. 2 p. 22. As a result, the Interim Executive Director of the Disciplinary Commission informed Laux that the matter "d[id] not require any formal response" and the "file on th[e] matter [was] now closed." *Id.* Pursuant to the Indiana Rules for Admission to the Bar and the Discipline of Attorneys, because the grievance was dismissed and did not lead to the preparation of a formal Disciplinary Complaint, the matter was kept confidential and not available to the public. *See* Rule 23 §§ 12(a) (directing the preparation of a

Disciplinary Complaint if the contents of a grievance, "if proved, would warrant disciplinary action"), 22 (specifying that "[p]roceedings and papers that relate to matters that have not resulted in the filing of a Disciplinary Complaint shall be confidential and not available to the public"). Thus, with respect to the grievance, the alleged facts are incapable of supporting the element of publicity.

[25] Laux also argues there was publicity based on "the communications to [Laux's] children, extended family, current clients, the guardian ad litem in the guardianship proceeding, and while under oath." Appellant's Br. p. 23 (footnote omitted). Laux argues these allegations "illustrate that the private matters between [Laux] and [Father] were disclosed publicly." *Id.* Yet, to the extent the complaint focused on statements made under oath in connection with a guardianship proceeding, Indiana law bestows an "absolute privilege" protecting "pertinent and relevant statements made in the course of judicial proceedings." *Miller v. Reinert*, 839 N.E.2d 731, 737 (Ind. Ct. App. 2005), *trans. denied*. This is because the "public interest in the freedom of expression by participants in judicial proceedings . . . is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged." *Id.* at 735 (quoting *Briggs v. Clinton Cnty. Bank & Tr. Co. of Frankfort*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983)). Thus, Laux cannot pursue an invasion of privacy claim premised on statements made under oath as part of a judicial proceeding. Moreover, the remaining allegations regarding the farm relate only to communications to Laux's family members and a guardian ad litem. Although we acknowledge

"there is no threshold number that constitutes 'a large number' of persons" to support the publicity requirement," here, there is simply no indication the communications were "communicated in a way that either reaches or is sure to reach the public in general or a large enough number of persons such that the matter is sure to become public knowledge." *McKenzie*, 185 N.E.3d at 382.

In sum, we conclude Laux failed to state a viable claim of invasion of privacy.

### E. Punitive Damages

The final count of the complaint alleged Laux was entitled to punitive damages. Notably, however, "[p]unitive damages are a remedy, not a separate cause of action." *Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 137 (Ind. 2005). Because we have identified no viable cause of action, there is no claim that could support a remedy of punitive damages. We therefore conclude that the trial court did not err in dismissing the claim related to punitive damages.

## Conclusion

Laux failed to adequately state his claims of defamation, tortious interference with a business relationship, intentional infliction of emotional distress, invasion of privacy, and entitlement to punitive damages. We therefore affirm.

Affirmed.

Riley J., and Brown, J., concur.

Appellant pro se

Christopher Lewis Laux
Notre Dame, Indiana


Attorneys for Appellees

Tiernan B. Kane
Joseph E. Cavello
SouthBank Legal, LLC
South Bend, Indiana