In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2280

Donna F. Pryor,

Plaintiff-Appellant,

v.

Seyfarth, Shaw, Fairweather & Geraldson,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 7588--Harry D. Leinenweber, Judge.

Argued January 7, 2000--Decided May 11, 2000

 Before Posner, Chief Judge, and Rovner and Evans,
Circuit Judges.

 Posner, Chief Judge.  The plaintiff appeals from
the dismissal of her suit, on motion for summary
judgment, for sexual harassment, and for
retaliation for complaining about it, all in
violation of Title VII. She was a secretary at a
large Chicago law firm and claims that in 1994 a
partner named Woodford for whom she was working
harassed her on account of her gender. She bases
the claim on five incidents, which for purposes
of this appeal we assume happened exactly as she
claims they did, spread over the last half of the
year:

1. Woodford asked to see a "Frederick's of
Hollywood" catalog that was on the plaintiff's
desk and asked her whether she had ever bought
anything from Frederick's. When she said yes,
Woodford responded: "Well, can I see some
pictures of you in some of the outfits that you
have bought from Frederick's of Hollywood?" She
said she had bought only shoes from Frederick's,
and so there were no pictures of her wearing
outfits from that store. He said, "Well, when you
get some pictures can I see them?"

2. He said her shoes were "unusual" and that he
"prefer[red] to see you in shoes with your toes
out as opposed to those type of shoes."

3. He asked her "What's the color for next week?" and when she replied that she didn't know he said, "Do all your clothes correspond?"

4. Working on a case the documents in which included a book that had pictures of women in bondage or black leather, Woodford asked Pryor to "look at this." When she inquired whether it was relevant to a case, he replied, "No, I just wanted you to see it."

5. Noticing an outfit in a shopping bag behind Pryor's desk, Woodford said, "Oh, a new outfit?" And when she said yes, he said, "Is that something you got from Frederick's of Hollywood?"

Neither singly nor in combination do these incidents rise to the level at which alleged sexual harassment becomes actionable under federal law. Incidents 3 and 5 seem entirely innocuous, 1 and 2 mildly flirtatious, and 4 possibly suggestive or even offensive, but not so offensive as to constitute actionable harassment. For Title VII does not forbid sexual harassment as such. The harassment must be sufficiently severe that a rational trier of fact could find that it had actually changed the conditions of the plaintiff's workplace, e.g., Silk v. City of Chicago, 194 F.3d 788, 804 (7th Cir. 1999); Cowan v. Prudential Ins. Co., 141 F.3d 751, 755-56 (7th Cir. 1998); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245-46 (11th Cir. 1999), for only sexual discrimination that changes those conditions is (so far as bears on sexual harassment at any rate) actionable under that statute. E.g., Smith v. Sheahan, 189 F.3d 529, 532 (7th Cir. 1999). The harassment alleged here falls short of the harassment held in Baskerville v. Culligan Int'l Co., 50 F.3d 428 (7th Cir. 1995), and other cases, e.g., McKenzie v. Illinois Dept. of Transportation, 92 F.3d 473, 476-77, 480 (7th Cir. 1996); Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 538, 534 (7th Cir. 1993); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 334-35, 337 (7th Cir. 1993); Mendoza v. Borden, Inc., supra, 195 F.3d at 1242-43, 1247 (and cases cited in id. at 1246-47); Shepard v. Comptroller of Public Accounts, 168 F.3d 871, 872, 874 (5th Cir. 1999); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998), to be beyond the reach of Title VII because insufficiently severe to change the conditions of employment as they would be perceived by a reasonable person, not hypersensitive.

 Pryor seeks to distinguish these cases by means of two affidavits filed after her deposition, at which she testified about the five incidents summarized above. One affidavit is hers and asserts that Woodford had been harassing her for

years. The other affidavit is by another former employee of the Seyfarth firm and alleges that she was harassed by Woodford too. As far as Pryor's affidavit is concerned, she gives us no reason to depart from the presumption that an affidavit which seeks to bolster a party's prior deposition is not entitled to consideration, e.g., Maldonado v. U.S. Bank, 186 F.3d 759, 769 (7th Cir. 1999); Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997), while the other affidavit shows only that Pryor's lawyer is confused about the rule that sexual harassment is actionable under Title VII only when it changes the plaintiff's conditions of employment. Insofar as Woodford harassed other employees, and did so without (so far as appears) Pryor's knowledge, it could not have altered her conditions of employment, and so she could not complain about that harassment under Title VII. Burnett v. Tyco Corp., 203 F.3d 980, 981 (6th Cir. 2000); Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 249 n. 4 (6th Cir. 1998); Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 171 (10th Cir. 1996); Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782 (10th Cir. 1995). At argument her lawyer told us that Woodford had leered at her without her knowing it, and he adduced this as evidence that Woodford's harassment was "pervasive." It was actually irrelevant.

So the claim of sexual harassment fails. But Seyfarth does not argue that the claim was so frivolous that the making of it showed that Pryor was unfit to remain at the firm--that she was the harasser. See McDonnell v. Cisneros, 84 F.3d 246, 259 (7th Cir. 1996). And so her claim of retaliation is unaffected by the failure of her claim of harassment.

Three months after she filed that claim she was fired by Seyfarth's personnel manager after being discovered glueing an artificial fingernail on the finger of a friend in the ladies' bathroom at the Seyfarth firm. Seyfarth points out that even if the offense seems a trivial one not meriting the discharge of a long-term employee, still, so long as the discharge was not motivated by the fact that Pryor had filed a claim against the firm the disproportionate character of the manager's action could not establish liability under Title VII. That is true, because Title VII is not a "good cause" statute; it creates a remedy against invidious discrimination (or, as here, retaliation), not against caprice. The circumstances leading up to the discharge, however, cast enough suspicion on the motive for firing Pryor to entitle her to a trial.

To begin with, if the facts are taken as they should be in the light most favorable to Pryor,

there was no "offense." She was on her break when she applied the nail; she had been "doing" nails for her coworkers for years; there was no rule against having a visitor and doing the visitor's nail; and the procedure took only 30 seconds. We repeat that it is not our business whether the firm had good cause to fire Pryor; but it would be odd if the firm had delegated to its personnel manager the authority to fire a long-term employee for entirely capricious reasons-- sufficiently odd to make one wonder whether retaliation rather than whim may have been the real cause of the firm's action.

Against this Seyfarth argues that the incident with the nail was merely the straw that broke the camel's back--Pryor's secretarial work was unsatisfactory and her attire "inappropriate." Yet she had been working for the firm for nine years when she was fired in May 1995, and, so far as the documentary record, at least, is concerned, her work had been entirely satisfactory throughout. As recently as the summer of 1994, her annual performance reviews (the last before she was fired) by the three lawyers she was working for then had been highly positive, especially the review by an associate named Dalinka for whom she worked. Dalinka in his deposition testified that Pryor's work had actually been unsatisfactory when he filled out the performance-review form and that he had given her a glowing report in order not to make her feel bad. Yet the form requires only that the reviewer check boxes (needs improvement, satisfactory, etc.) beside each task category. There are spaces for optional comments under the boxes, and Dalinka went out of his way to make positive comments in each space, though he could just have checked the boxes without hurting Pryor's feelings. His going the extra mile, as it were, casts doubt on his testimony that he was making a merely pro forma positive report, and by undermining his credibility also casts doubt on his further and more fundamental testimony that Pryor's work had deteriorated. Wylie v. Ford Motor Co., 536 F.2d 306, 307-08 (10th Cir. 1976).

It is common for supervisors to overrate their subordinates for purposes of building morale, avoiding conflict, and deflecting criticisms that the supervisor isn't doing a good job (or that he shouldn't have hired this subordinate in the first place). Not much weight can be given to positive reviews. But not much does not equal zero. And by going out of his way to say nice things about the plaintiff Dalinka made it possible for a reasonable trier of fact to infer that his later denigration of her performance was invented for purposes of the litigation. Disbelieving a witness's testimony about one of

the material facts in a case can justify the trier of fact in disbelieving the witness's contested testimony on other material facts. Dressler v. Busch Entertainment Corp., 143 F.3d 778, 781 (3d Cir. 1998); Burton v. State, 651 So.2d 641, 655-56 (Ala. Crim. App.), aff'd sub nom. Ex parte Burton, 651 So.2d 659 (Ala. 1994). An affidavit from another lawyer for whom Pryor worked denied that she had any performance problems; and Dalinka never documented any of his concerns about her performance. One doesn't want to encourage bureaucracy in the workplace; but of all employers, lawyers can be expected to be most sensitive to charges of employment discrimination and most assiduous about documenting actions calculated to rebut such charges. Especially a law firm like Seyfarth that specializes in employment law!

Dalinka testified that Pryor refused to learn the computer program Excel. He says that all secretaries were required to learn it, but Seyfarth cannot locate a document saying this. Pryor testified that, far from refusing to learn Excel (which however she testified was optional rather than mandatory), she was scheduled for an Excel lesson the very day she was fired.

Finally, the personnel manager criticized Pryor for "inappropriate attire" (apparently, wearing stretch pants and a sweater top). The manager testified that Pryor persisted in wearing such attire; Pryor testified that she immediately switched to wearing suits. Such a conflict cannot be resolved on summary judgment.

Not only may the grounds on which Pryor was fired have been pretextual, but she presented evidence that Seyfarth had a policy of progressive discipline which would have precluded the firing of Pryor for such trivial offenses without prior warnings which it is conceded she did not receive. Seyfarth denies the existence of such a policy, but this is another issue of fact that cannot be resolved on summary judgment. Its argument that an employee is incompetent to testify to the existence of an employment policy is absurd.

The personnel manager testified that she didn't know that Pryor had filed a claim against the firm when she fired her, but this was another bit of contested evidence that a jury would not be required to believe. The snitch who turned Pryor in to the personnel manager for the nail misdemeanor knew about the claim, and the manager spoke to other people at the firm before firing her, including Dalinka, whose complaints about Pryor's performance may have been fabricated as part of a retaliatory scheme. Dalinka,

incidentally, worked in the same department of the firm as Woodford.

A reasonable jury could find that after and because Pryor filed a claim, the firm was "laying" for her, biding its time to create a space between the date of the claim and the date of the discharge, and in the interval gathering pretextual evidence of misconduct to provide a figleaf for its retaliatory action. Of course we do not hold that this is the correct interpretation of the events, only that the matter is sufficiently in doubt to require a trial.

The dismissal of the harassment count is affirmed, but the dismissal of the retaliation count is reversed and the case remanded for further proceedings consistent with this opinion.

Affirmed in Part, Reversed in Part, and Remanded.